No. 24,792.

THE STATE OF KANSAS, *Appellee*, v. T. L. PERSONETT, *Appellant*.

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Violation of Penal Provisions of Industrial Court Act—Intimidating Workman—"Picketing"—Evidence—Instructions—Offenses Punishable Under State Statutes.* In a prosecution for the violation of the penal provisions of the Industrial Court Act (Laws 1920, ch. 29) it is held:

1st. That the information charges the offense of intimidation, as well as that of picketing.

2d. That the evidence is sufficient to sustain a verdict of guilty.

3d. That the instructions are in harmony with the provisions and purposes of the act; and

4th. That the act is not rendered ineffective because the offense occurred in connection with a strike against an interstate common carrier.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed November 10, 1923. Affirmed.

*Elmer E. Martin,* of Kansas City, and *Ralph Page,* of Ottawa, for the appellant.

*C. B. Griffith,* attorney-general, *B. F. Bowers,* county attorney, and *J. B. Wilson,* of Lawrence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Appellant was tried to a jury and convicted of the violation of the penal provision of the Industrial Court Act (Laws of 1920, ch. 29), and has appealed. The information reads as follows, omitting formal parts:

"That at and in the County of Franklin, State of Kansas, on the —— day of July, 1922, the above named defendants, Thos. L. Personett, J. A. Beiler, and —— Lewis did then and there unlawfully and willfully engage in what is commonly known as 'picketing' in this, to-wit:

"That said defendant did approach and accost one A. L. Smith, he then and there being an employee of the Atchison, Topeka and Santa Fe Railway Company, a corporation (and a common carrier operating a railroad in said county and within said state, and transporting food products, fuel, and articles or substances entering into wearing apparel, from places where produced to places to manufacture and consumption), for the purpose of picketing, and did picket and attempt to induce the said A. L. Smith to cease working as an employee of the above named railroad company, and did then and there threaten and intimidate the said A. L. Smith—all with the intent to induce the said A. L. Smith to quit the employment of the said railroad company, and with the intent and for the purpose of preventing the said A. L. Smith from remaining in the employ of said common carrier, and thereby to prevent the continuous and efficient operation of the said railroad, and thereby to cause the hindering, delaying, interfering with and suspension of the operation of the said railroad and the transportation of the products aforesaid in the manner before stated."

There were three counts in the information, all couched in the same language except that the "picketing" alleged in the first count was with reference to one C. E. Andrews, in the second count with reference to one L. D. Hammond, and in the third count with reference to A. L. Smith. All of the defendants were found not guilty on the first and second counts and Personett alone was found guilty on the third count.

The evidence disclosed that the A. T. & S. F. Railway Company has shops at Ottawa, Kan., where it employed 234 men, all or most of whom belonged to the Brotherhood of Railroad Carmen, sometimes called the Carmen's Union, a national organization

among the workmen in railway shops; that a general strike had been called by the Carmen's Union, effective July 1, 1922; that at Ottawa 136 of the men went out on the strike, the other 98 employees in the shops, all or most of whom belonged to the Carmen's Union, continued at their work. Appellant was general chairman of the Brotherhod of Railway Carmen of the Santa Fe system and lived at Kansas City, Kan. On July 4, 1922, he went to Ottawa to address a meeting of the membership of the local organization, which meeting was held in the afternoon in the Odd Fellows hall. After the meeting he got in an automobile with Mr. Lewis and Mr. Beller and started to drive to the north part of the city. Along the street they met Mr. A. L. Smith, who was in an automobile with his son-in-law, Mr. Stevenson. Smith was one of the men, a member of the Carmen's Union, who remained at work after the strike was called and was well acquainted with both Lewis and Beller and had met Personett on one or more occasions at their Union meetings. Beller waved to Smith to stop; Personett got out of the car in which he was riding and had a conversation with Mr. Smith, which that witness states as follows:

"Mr. Personett came to the car and put one foot on the running board and leaned over on the right door. I was sitting on the right side. My son-in-law was driving, and he shook hands and he says 'I hear that there is quite a bunch of you boys working, and I came down here to see what was the matter.' And I says 'I suppose you have reference to the work at the shops' and he said he had, and I told him that I felt like I wanted to be loyal to my family and loyal to the government, and he said he presumed that I thought the strike was against the government, and that was the stand that I took, and he went ahead and explained to me and gave me his idea in regard to the strike. . . . I can't just say everything that he said in regard to that, but he made the statement of different roads that had violated the decision of the wage board and that he didn't think the strike was against the government, but against the roads. . . . Well I asked him if he thought they stood any chance to win, and he said he thought they didn't stand any chance to lose, and I asked him what he based his judgment on and he said they was already running passenger trains with switch engines. Q. Did he say anything to you in that conversation as to what would happen to you if you didn't go out, or if you stayed at work with the company? A. He said he didn't know what the feeling of the boys would be that went out towards those that remained . . . [He also said] 'Before I go, I would like for you to promise me that you will not go back to work to-morrow morning. . . . I called him Thomas. I said 'Thomas, I can't make you that promise because if I did, I certainly wouldn't go back' and he says ' I believe that' 'But' I says 'I will promise you this: I will go home and consider this thoroughly, and whatever I decide I will be justified in doing, I will do.' "

This evidence was corroborated in the main by Mr. Stevenson, who was in the car with Mr. Smith, though he did not remember all of it, and was not seriously controverted by appellant, though his testimony was more in detail and tended to be more favorable to him as to the interpretation which should be given to the language used. There was also evidence tending to show that the appellant, Lewis, and Beller went to see Mr. Hammond and also Mr. Andrews that same afternoon, both of whom were members of the Carmen's Union and continued work, and talked with them in an effort to get them to join the strikers.

The instructions pertinent in this inquiry are as follows:

"One of the sections of this act [Laws 1920, ch. 29, commonly known as the Industrial Court Act] provides that the operation of common carriers is determined and declared to be affected with a public interest, and therefore subject to supervision by the State as elsewhere provided in the act, for the purpose of preserving the public peace, protecting the public health, preventing industrial strife, disorder, and waste, and securing regular and orderly conduct of the business directly affecting the living conditions of the people of this state and in the promotion of the general welfare.

"Section 17 of the act provides that:

"'It shall be unlawful for any such individual employee or other person to conspire with other persons to quit their employment or to induce other persons to quit their employment for the purpose of hindering, delaying, interfering with, or suspending the operation of any of the industries, employments, public utilities, or common carriers governed by the provisions of this act, or for any person to engage in what is known as "picketing" or to intimidate by threats, abuse, or in any other manner any person or persons to quit such employment or for the purpose of deterring or preventing any other person or persons from accepting employment, or from remaining in the employ of any of the industries, employments, public utilities or common carriers governed by the provisions of this act.'

"Section 18 of the act provides that any person who shall wilfully violate the provisions of the act shall be deemed guilty of a misdemeanor.

"9. Before the defendants can be convicted as charged in the third count of the information, the State must establish to your satisfaction beyond a reasonable doubt that in Franklin County, Kansas, on or about July 4th, 1922, the said defendants did then and there unlawfully and wilfully engage in what is commonly known as 'picketing' one A. L. Smith, with the intent to induce him to quit his employment with, or for the purpose of deterring or preventing him from remaining in the employ of the Atchison, Topeka and Santa Fe Railway Company, the said A. L. Smith being at the time an employee of said railway, but if you do so find beyond a reasonable doubt, you should convict the defendants or such one or more of them as you find beyond a reasonable doubt to be guilty as charged in said third count.

"12. It will be noticed, gentlemen of the jury, that the defendants are charged in the information with the act of 'picketing' and you are advised

that this word was originally used in connection with strikes to denote a detachment of men, or one man stationed at the instance of the strikers near or about the institution against which the strike is directed for the purpose of inducing by persuasion, threats or intimidation the men refusing to strike, to join the strikers or to prevent in such manner any outsiders intending or desiring to enter the employ of the institution against which the strike is directed from entering into such employ for the purpose of making the strike more effective.

"13. You are further advised that to constitute 'picketing', it is not necessary that the man or men be stationed at any particular place with respect to the location of the institution against which the strike is directed, but that in this case, if you find that the defendants or any one of them in the interest of the strikers approached or accosted any person in the employ of the Atchison, Topeka and Santa Fe Railway Company in Franklin County, Kansas, on or about the 4th day of July, 1922, and within two years prior to the time of the filing of the information herein and by means of persuasion, threats or intimidation interfered with or attempted to interfere with the relation between the said railroad company and its employees with respect to the continuity of their employment with the intent to induce such employees of the said railroad company to quit said employment, you should find the defendants or any one of them whom you find to have engaged in the acts just thereinbefore set out, to be guilty of 'picketing' and this you will find, even though the acts of the defendants or any one of them as aforesaid consisted only of peaceable arguments.

"14. You will notice that the act I have informed you in regard to, makes 'picketing' unlawful when exercised with reference to an individual or individuals employed by a common carrier, and in this connection I have to advise you that the Atchison, Topeka and Santa Fe Railway company is a common carrier within the meaning of that act.

"15. Applying the rules I have attempted to give you in this case, I have to advise you that if you find that the defendants or some one or more of them talked to C. E. Andrews or L. D. Hammond or A. L. Smith on or about July 4th, 1922, they being employees of the Atchison, Topeka and Santa Fe Railway Company, with the intent, motive or purpose of inducing him to quit his employment, or from remaining in the employ of such railway, then the defendants would be guilty as charged in the information, irrespective of the reason given by them to Andrews, or Hammond or Smith, or the quietness of such conversation. The defendants would have a right to talk to persons, however, even though such persons be in the employ of the Santa Fe Railway, and in such conversation might refer to and discuss matters connected with the strike of certain employees of the railway.

"16. You will readily see that the most important matter for you to determine in this case is the intent or purpose in the minds of the defendants when they or some of them engaged Andrews or Hammond or Smith in conversation, and I have to advise you that no particular or specific evidence of intent need be forthcoming from the State, as every person is deemed to intend the natural and logical result of any words or acts used by him, and a person's intent may be inferred from his words and actions. In this con-

nection, with the intent of the defendants you may take into consideration the fact, if it be a fact, that some of the defendants were 'on strike', the official positions held by any of the defendants in the Union, some of the members of which were on strike, and the interest the defendants or any of them would have in inducing men who did not strike, or who were working for the railway in question to quit such employment.

"17. You are further advised that any statements by the defendants or any of them as aforesaid constituting a threat or notice to the parties mentioned in the information that unless those parties quit the employment of the Atchison, Topeka & Santa Fe Railway Company, they would afterwards lose their jobs because of the attitude of the strikers on whose behalf the defendants were speaking and thus lose their means of sustenance and of caring for those dependent upon them, constitute threats and intimidation as contemplated by the law referred to."

It should be noted that on the day in question none of the shopmen were at work, it being July 4 and a holiday at the shops.

Appellant contends that the information charged him with the offense known as "picketing," which was the only charge he was prepared to meet, but it is broader than that. It charges that appellant did "picket and attempt to induce . . . and did . . . threaten and intimidate," etc. All of which are made offenses by section 17 of chapter 29 of the Laws of 1920. Hence this point is not well taken.

Appellant contends that the evidence is insufficient to sustain the conviction. This is based on the definition of "picketing" as given by some of the authorities. He quotes from *Hall v. Johnson*, 87 Ore. 21, as follows:

"Picketing by members of a trade union on strike consists in posting members at all the approaches to the works struck against for the purpose of observing and reporting the workmen going to or coming from the works and of using such influence as may be in their power of preventing the workmen from accepting work there." (p. 27.)

And from *Jones v. Van Winkle Machine Works*, 131 Ga. 336, as follows:

"The very word 'picket' [in connection with strikes] is borrowed from the nomenclature of warfare and is strongly suggestive of a hostile attitude toward the individual or corporation against whom the labor union has a grievance . . . The most favorable consideration means an interference between the employer seeking employes and the men seeking employment." (p. 340, and other authorities.)

It is clear from the evidence in this case that appellant and his two companions were putting in some time that afternoon calling on influential members of the Carmen's Union who had not gone out

on the strike and endeavoring to induce them to quit work and join the strikers; and it would seem to be just as offensive, and possibly more effective, to hunt them up on the street or at their homes as it would be to stand in line on their approach to the shops and observe them or talk with them. Furthermore, the evidence in this case might be construed as intimidating and threatening. Among other things, appellant said to Smith that "He didn't know what the feeling of the boys would be that went out toward those that remained." When this is taken in connection with other assertions of appellant to the effect that the strikers were sure to win, and the general setting of the entire situation, it might properly be regarded as an effort to intimidate Smith by intimating that he would not have good standing among his fellow workmen, or possibly as a threat that other workmen who went out on the strike would not permit him to work in the event their strike was a success. The jury had the right to interpret this remark in view of all that was said and in view of all the facts and circumstances of the case as disclosed by the evidence. Their verdict, in effect, found that the appellant did intimidate and threaten Smith. So, in either light we view it, it would seem there was ample evidence to support the verdict.

Appellant complains of the instructions of the court. The purpose of the Industrial Court Act was to provide for the continuity of operation of the essential industries named in section 3 of the Act, among which was common carriers, such continuity of operation being declared essential to the public welfare. Whatever may be the final holding of the courts as to the validity of the act in so far as it pertains to other industries, it has been settled beyond question that common carriers are affected with the public interest. (*Wilson v. New*, 243 U. S. 332; *Wolff Packing Co. v. Court of Industrial Relations*, 67 L. Ed. 756.) That the reasonable continuity of operation of an industry affected with the public interest is essential to public welfare no one will question. The act is an attempt to provide an amicable method by which controversies between employer and employee in industries affected by public interest respecting wages, hours of service and working conditions can be adjusted without the necessity of strikes; and, in order to make the purposes of the act effective, stringent provisions both as to employer and employee are embodied in the act, and among other things all those things which employees sometimes do, such as conspiracies to induce persons to quit work, picketing, intimidation,

in whatever form they may be employed, are made offenses by the provisions of the act. It is not intended that employees should be prohibited from counseling with each other in regard to their best interests. Neither does it attempt to prevent one from quitting his employment if he desires to do so, but, on the other hand, it contemplates that the man who wants to work shall be permitted to do so, and that he shall not be conspired against, intimidated, or interfered with in any way. It is especially provided in the act that its provisions shall be liberally interpreted for the purpose of promoting its object. (Laws of 1920, ch. 29, § 26). It may be noted that a strike is not a quitting of employment. The man who goes out on a strike does not profess to quit his employment. He still lays claim to his position and asserts a right to go back and take it at more advantageous terms. One of the aims of this statute was to make it possible for the man who wants to work to do so without hindrance or molestation. The instructions given are in accordance with the purposes and intent of the Act.

Finally, appellant contends that the statute in question does not apply to a strike upon the A. T. & S. F. Railroad for the reason that it is an interstate common carrier and as such is under the supervision of the Interstate Commerce Commission and that it does not come within the supervision of the Court of Industrial Relations; but the Santa Fe Railroad, like all railroads doing an interstate business, does also an intrastate business and to that extent, at least, comes within the supervision of the Court of Industrial Relations. In any event, this is an offense provided by our state statute and applies, of course, to any act constituting such offense within this state.

Finding no error in the record the judgment of the court below is affirmed.

HOPKINS, J., not sitting.

HARVEY, J. (dissenting): The statute which appellant is charged with violating, as set forth in the instructions of the court, defines three offenses, (a) a conspiracy to quit employment or to induce other persons to quit, (b) for any person to engage in what is known as "picketing," or (c) to intimidate a workman. The information in this case charges the second one of these offenses by charging that appellant did "engage in what is commonly known as picketing in this, to wit:" What follows in the information is in the nature of a bill of particulars describing the particulars in which the picketing

was done. The legislature did not intend to enlarge the meaning of the word "picketing" for the offense it created was "what is known as picketing." That would indicate that one ought to be able to turn to his dictionary, encyclopedia or to reported cases defining the term and know what the offense consists of. The word "picket" is defined in Webster's Dictionary as "a body of men belonging to a trades union sent to watch and annoy men working in a shop not belonging to the union or against which a strike is in progress." Black's Law Dictionary says, "Picketing by members of a trade union on strike consists in posting members at all the approaches to the works struck against for the purpose of observing and reporting the workmen going to or coming from the works and of using such influence as may be in their power of preventing the workmen from accepting work there."

And it is in this sense the term is used in the following cases: *Ideal Manufacturing Co. v. Ludwig*, 149 Mich. 133; *Beck v. Teamsters' Protective Union*, 118 Mich. 497; *Jones v. Van Winkle Machine Works*, 131 Ga. 336; *Cumberland Glass Mfg. Co. v. Glass Bottle Blowers' Ass'n.*, 59 N. J. Eq. 49; *Mills v. United States Printing Co.*, 91 N. Y. Supp. 185; *Walter A. Wood Mowing & R. Mach. Co. v. Toohey*, 186 N. Y. Supp. 95; *Hardie-Tynes Mfg. Co. v. Cruse et al.*, 189 Ala. 66; *Hall v. Johnson*, 87 Ore. 21; *Union Pac. R. Co. v. Ruef*, 120 Fed. 102; *Pope Motor Car Co. v. Keegan*, 150 Fed. 148; *Goldfield Consol. Mines Co. v. Goldfield M. U. No. 220*, 159 Fed. 500, 523.

In my judgment the evidence is not sufficient in this case to sustain the charge that the appellant committed the offense known as picketing. It is no answer to this to say that under the evidence as disclosed by the record as a whole appellant might have been charged with conspiracy to induce others to quit work or that he might have been charged with intimidating a workman. The fact remains that he was not charged with either of these offenses. Neither can I approve of the instructions given by the court, and especially instruction No. 15, where the jury is told that if appellant talked to Smith with the intent, motive or purpose of inducing him to quit his employment, then he would be guilty as charged in the information without regard to what he said to Smith or the quietness of such conversation. I have not reached the point where I feel willing to say that what a person has in his mind constitutes a crime when it is not accompanied by any act or spoken word.