No. 68,733

CITY OF PRAIRIE VILLAGE, KANSAS, *Appellee,* v. THEODORE T. HOGAN, *Appellant.*

(855 P.2d 949)

Opinion filed July 9, 1993.

*Walter M. Weber,* of Washington, D.C., argued the cause, and *Richard A. Macias,* of Wichita, was with him on the brief for appellant.

*Fred L. Logan, Jr.,* of Logan & Logan, of Prairie Village, argued the cause, and *M. Bradley Watson,* of the same firm, was with him on the brief for appellee.

*Jim Lawing,* of Wichita, was on the brief for *amicus curiae* American Civil Liberties Union.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Theodore T. Hogan appeals from his conviction of violating Prairie Village Ordinance No. 1785, Article 9.13, which makes it "unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the city, or before or about any church in the city." He was found guilty in municipal court of picketing before or about a church, and he appealed to the district court. He was found guilty in the district court and was fined $300, with $200 of the fine suspended for one year upon the condition that he commit no further violations of the ordinance. Hogan appealed to the Court of Appeals, and the case was transferred to this court pursuant to K.S.A. 20-3018(c).

Hogan is a resident of Prairie Village. On Sunday morning, March 15, 1992, he was arrested and charged with "picket-

ing . . . before or about a church in the 6700 block of Mission Road between the hours of 0800 and 0945 hours" in violation of Prairie Village Ordinance No. 1785, Article 9.13 of the Uniform Public Offense Code, as amended and incorporated by reference in the Prairie Village Municipal Code, Title 10, Ch. 10.04.010 (1992).

On that morning, Hogan walked on the sidewalk on the west side of Mission Road, a north-south street. The streets marking the northern and southern boundaries of his walking route are Homestead and Tomahawk. In between lie 66th Street, 67th Street, 67th Terrace, 68th Street, and 68th Terrace.

On the east side of Mission Road, the Village Presbyterian Church is situated slightly north of 67th Street. The church maintains two parking lots. Both are on the east side of Mission Road, one north and one south of the church.

Hogan carried a sign. Hogan testified that one side of the sign "shows a dead baby with a question, 'Is it murder[?]' above it." Hogan testified that the other side shows "[a] head that has been not severed, but torn from the baby's body with a question, 'Is it murder[?],' above it and the publisher is Human Life International."

Hogan testified that his purpose in carrying the sign and walking along Mission Road was "to educate and inform people about the truth about abortion." He testified that he chose the location "because it would up my ante of Christians on their way to and from church." He testified that the congregation of Village Presbyterian Church was "part of [his] primary audience, but not [his] sole audience." He also aimed to reach individuals who were driving and walking along Mission Road.

Officer James Moyers testified that when he first observed him, Hogan was "mid-block between 66th and 67th." The officer observed Hogan walk back and forth twice "between 66th Terrace and 67th." He was directly across Mission Road from Village Presbyterian Church for approximately 100 feet of this circuit immediately to the north of 67th Street. The south end of the church building is at 67th Street.

The officer stopped Hogan at 67th Street. The officer checked Hogan's identification and then allowed him to continue walking while the officer obtained a copy of the picketing ordinance. The

officer testified that, instead of going north toward 66th Street, Hogan then "generally walked from 67th Street down towards 69th Street." According to the officer,

"[i]t was during that time that the call or the incident was taken over by Corporal Brooks [Officer Moyers' supervisor] who at that point advised Mr. Hogan of the ordinance, and after being warned and being videotaped, he continued in violation of Corporal Brooks' command to cease because he was violating the ordinance; and at that point I was instructed by Corporal Brooks to place Mr. Hogan under arrest."

The officer testified that he observed some pedestrians move from the west to the east side of Mission Road when Hogan was on the west side. He was unable to say whether they crossed the street to avoid Hogan or to get to the church. He also testified that at the time the pedestrians crossed over from Hogan's side, Hogan had been stopped and was being questioned by two police officers.

Hogan testified that he began walking on Mission Road at approximately 7:45 a.m. on the morning of March 15, 1992. He had walked from Homestead Street to Tomahawk Street and back twice before he was stopped by Officer Moyers at 67th Street and Mission Road. Thereafter, he walked south on Mission Road to Tomahawk (approximately three blocks) and back to 67th Street three times before he was stopped and arrested at 67th Terrace and Mission Road.

The district court's journal entry of judgment states in pertinent part as follows:

"4. The Court finds that at approximately 8 a.m. on Sunday, March 15, 1992, the defendant picketed before or about the Village Church, 6700 block of Mission Road, Prairie Village, Kansas in that he carried a sign bearing on each side a picture of an aborted unborn child and the message, 'IS IT MURDER?', in violation of the ordinance.

"5. The Court finds that the ordinance as applied to the conduct of the defendant serves a significant government interest in that it protects privacy and the free exercise of religion.

"6. The Court further finds that the ordinance as applied to the conduct of the defendant is narrowly drawn, not overly broad, and prohibits only focused picketing taking place before a particular residence or a particular church.

"7. The Court further finds that the ordinance left open to the defendant alternative channels by which he could express his views.

"8. The Court finds the ordinance to be content-neutral.

"9. The ordinance is accordingly constitutional.

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED that the defendant is found guilty of having violated Prairie Village Ordinance 1785, Article 9.13 of the Uniform Public Offense Code, as amended and incorporated by reference in the Prairie Village Municipal Code."

Hogan raises two issues on appeal. First, he contends that the district court erred in construing the ordinance to apply to his conduct. The ordinance provides as follows:

"It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the city, or before or about any church in the city.

"Every person convicted of violating this section shall be imprisoned for not more than one year or fined not more than $2,500 or by both such fine and imprisonment, provided that any person convicted of a second or subsequent conviction shall be required to be confined to not less than five consecutive days in the county jail in addition to any penalty assessed; which period of imprisonment shall not be suspended nor the defendant placed on probation until the five consecutive days are served."

In the present case, Prairie Village (City) prosecuted Hogan for targeting the Village Presbyterian Church for communication of his message. The City denied "trying to prosecute Mr. Hogan for walking in front of the residences on Mission Road." The City conceded that the ordinance could not be constitutionally applied to prosecute Hogan for carrying his sign in front of the residences on Mission Road because that conduct would not constitute picketing before or about a particular residence.

Hogan contends that his carrying his sign back and forth twice in front of the Village Presbyterian Church but on the opposite side of the street does not constitute picketing before or about a church. For purposes of this appeal, Hogan accepts the accuracy of Officer Moyers' testimony about Hogan's path. The City stated that it would not have prosecuted Hogan for a violation of the ordinance if he had walked back and forth between Tomahawk and Homestead without doubling back between 66th and 67th Streets.

The City argues that this issue is one of sufficiency of the evidence rather than construction of the ordinance, as it is stated by Hogan. The City contends that the scope of the court's review on this question should be as follows:

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained." *State v. Zuniga*, 237 Kan. 788, Syl. ¶ 5, 703 P.2d 805 (1985).

The City contends that there was sufficient evidence that Hogan was picketing the Village Presbyterian Church. Hogan does not dispute the City's evidence as to his conduct. Although the parties state the issue differently, it is essentially the same issue. Is Hogan's conduct prohibited by the ordinance? If it is not, then obviously the evidence is not sufficient to support Hogan's conviction. Whether the ordinance applies to Hogan's conduct is a question of law. See *State v. Schlein*, 253 Kan. 205, Syl. ¶ 1, 854 P.2d 296 (1993).

In *State v. Hupp*, 248 Kan. 644, 656, 809 P.2d 1207 (1991), we restated the rule that "it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." We have recognized that a statute or ordinance which is facially overbroad is to be construed and restricted to embrace only conduct which is not constitutionally protected. See *State v. Huffman*, 228 Kan. 186, Syl. ¶ 3, 612 P.2d 630 (1980). In *State v. Stauffer Communications, Inc.*, 225 Kan. 540, 592 P.2d 891 (1979), K.S.A. 21-3827 was challenged as unconstitutional for reasons of vagueness and overbreadth. In considering that issue, we said:

"The Supreme Court has consistently applied a stricter standard where the statute assailed as vague may impinge on First Amendment interests. 'Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.' *Smith v. Goguen*, 415 U.S. 566, 573, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974). The reason for this is 'First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963)." 225 Kan. at 546.

In *Frisby v. Schultz*, 487 U.S. 474, 101 L. Ed. 2d 420, 108 S. Ct. 2495 (1988), the United States Supreme Court upheld an

ordinance which prohibited picketing before or about any residence. In upholding it, the Supreme Court gave the ordinance the following narrow reading:

"[I]n order to fall within the scope of the ordinance the picketing must be directed at a single residence [citation omitted]. General marching through residential neighborhoods, or even walking a route in front of an entire block of houses, is not prohibited by this ordinance. [Citation omitted.] Accordingly, we construe the ban to be a limited one; only focused picketing taking place solely in front of a particular residence is prohibited." 487 U.S. at 483.

Here, consistent with *Frisby*, the district court narrowly construed the ordinance to prohibit "only focused picketing taking place before a particular residence or a particular church." Such an interpretation is also consistent with the City's contention that the ordinance is narrowly tailored to apply only to the targeted picketing of a specific church. The district court found Hogan's conduct to be focused picketing and therefore a violation of the ordinance.

Hogan contends that his was not focused picketing taking place solely in front of the church building. He was not on the same side of the street as the church, and he walked a multi-block route. He contends that the City unfairly focused on an unrepresentative segment of his route for the purpose of prosecuting him.

In *Frisby v. Schultz*, the Supreme Court found "picketing" defined in Webster's Third New International Dictionary 1710 (1981), as "posting at a particular place." 487 U.S. at 482. In the present case, neither party has directed this court to a different definition. The decisions of this court have defined picketing in the context of a labor dispute. See *State v. Personett*, 114 Kan. 680, 220 Pac. 520 (1923). In *Newell v. Local Union 795*, 181 Kan. 898, 911, 317 P.2d 817 (1957), we said:

"The unfair labor practices of which appellee complains consist of unlawful picketing and boycotting. G.S. 1955 Supp., 44-809, insofar as pertinent herein provides:

'It shall be unlawful for any person

. . . .

'(14) To engage in picketing by force and violence, or to picket in such a manner as to prevent ingress and egress to and from any premises, or to picket other than in a peaceable manner.' "

Webster's New Twentieth Century Dictionary 1356 (2d ed. 1973) defines picketing as "the act of guarding or watching with pickets; especially, the act of a labor organization in posting pickets during a strike." 2 The Compact Edition of the Oxford English Dictionary 2166 (1971) defines picketing as "[t]he action of the [verb] picket . . . (b) in a labour dispute, the posting of men to intercept non-strikers on their way to work and prevail upon them to desist."

Neither party challenges the definition set out in *Frisby*. Hogan contends that he was not picketing within the meaning of this definition because his communication was not directed at the church. The City points to Hogan's admission that he walked back and forth across the street from the church. The City contends that his conduct falls within the definition of "picketing" which is set out in *Frisby*. The City points to Hogan's testimony that his purpose in picketing was to "up his ante" of Christians on their way to and from church.

Although this case does not involve a labor dispute, it is noteworthy that Hogan's conduct was neither violent nor forceful, nor did he prevent or impede the ingress or egress to the church. Hogan was not posted at or in front of the church. He walked a route on the opposite side of the street which took him several blocks north and several blocks south of the church. He was not protesting the church, its teachings, or its members. Although he walked the general area because of the probability of a high concentration of "Christians," his message was directed to all persons traversing Mission Road. We interpret the ordinance to prohibit focused picketing taking place solely in front of the church. We conclude, based upon the required narrow reading of the ordinance, that Hogan was not engaged in conduct prohibited by the ordinance. He was not picketing a church within the meaning of this ordinance.

Since we conclude the ordinance does not apply to Hogan's conduct, it is not necessary to pass upon his challenge to the constitutionality of the ordinance. We will not consider a constitutional challenge to a statute or ordinance where our decision

can be based on other grounds. See *State, ex rel., v. Barnes,* 171 Kan. 491, 233 P.3d 724 (1951).

The judgment of the district court is reversed.