# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3457

_____

Ismael Dominguez-Herrera; Lidia Cristina Hernandez-Martinez

*Petitioner*s

v.

Jefferson B. Sessions, III, Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 17, 2016
Filed: March 7, 2017

_____

Before RILEY, Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Petitioners Lidia Cristina Hernandez-Martinez and Ismael Dominguez-Herrera, a married couple, appeal the denial of their consolidated applications for cancellation of removal under section 240A(b) of the Immigration and Nationality Act (INA), 8

_____

[1]Jefferson B. Sessions, III, is automatically substituted pursuant to Federal Rule of Appellate Procedure 43(c)(2).

U.S.C. § 1229b(b)(1). Because the petitioners have failed to meet their burden under the REAL ID Act to establish their eligibility for cancellation of removal, we deny their petition. See 8 U.S.C. § 1229a(c)(4).

## I. Background

Hernandez-Martinez and Dominguez-Herrera are non-permanent residents of the United States. On February 17, 2011, the Department of Homeland Security served Hernandez-Martinez with a Notice to Appear, charging her with deportability under section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B), on the grounds that she was an alien who had remained in the country longer than permitted. On April 26, 2012, she submitted a written pleading admitting to the factual allegations of the Notice to Appear and conceding removability. On August 9, 2011, the Department of Homeland Security served Dominguez-Herrera with a Notice to Appear, charging him with inadmissibility under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A), on the grounds that he was an alien present in the country without being admitted or paroled. He admitted the factual allegations of the Notice to Appear, and an immigration judge (IJ) found that he was subject to removal on September 8, 2011.

Both petitioners applied for cancellation of removal under section 240A(b) of the INA, 8 U.S.C. § 1229b(b)(1), which provides, "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien" meets certain conditions. One condition is that the alien has not been convicted of an offense under 8 U.S.C. § 1227(a)(2). The IJ concluded, and the BIA affirmed, that both petitioners had committed an offense described in 8 U.S.C. § 1227(a)(2)(A)(i): "a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed." Specifically, the IJ concluded that Hernandez-Martinez had been convicted of theft in the municipal court of Hutchinson, Kansas,

and Dominguez-Herrera had been convicted of theft in the municipal court of Great Bend, Kansas. Both Hutchinson and Great Bend have adopted the Kansas Uniform Public Offense Code (UPOC). The IJ concluded that each petitioner was convicted of theft under UPOC § 6.1. The relevant version of UPOC § 6.1 provides, in part:

> Theft is any of the following acts done with the intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
>
> (a) Obtaining or exerting unauthorized control over property;
>
> (b) Obtaining by deception control over property;
>
> (c) Obtaining by threat control over property; or
>
> (d) Obtaining control over stolen property knowing the property to have been stolen by another.

In determining that each petitioner was convicted of theft under UPOC § 6.1, the IJ relied on various municipal court documents. With respect to Hernandez-Martinez, the record includes: a complaint charging Hernandez-Martinez with violating UPOC § 6.1(a); a form titled Waiver of Right to Counsel and Trial, which states that Hernandez-Martinez was charged with theft under the UPOC; and a court docket sheet indicating that Hernandez-Martinez pleaded guilty to a violation of UPOC § 6.1(a). With respect to Dominguez-Herrera, the only document in the record is an Abstract of Conviction, which states Dominguez-Herrera was convicted of "theft" in violation of "21-3701." Kan. Stat. Ann. § 21-3701 (recodified effective July 1, 2011 at § 21-5801) is a state criminal statute that is nearly identical to UPOC § 6.1.

Thus, the IJ concluded the petitioners were not eligible for cancellation of removal, and ordered the petitioners to be removed. The Board of Immigration Appeals (BIA) affirmed, and the petitioners filed the present petition for review.

## II. Discussion

The petitioners appeal the BIA's conclusions on three grounds: (1) that the municipal judgments against them are not criminal convictions; (2) that the offenses were not crimes involving moral turpitude; and (3) that the maximum penalty possible for each offense was less than a year.

Under 8 U.S.C. § 1252(a)(2)(B)(i), "no court shall have jurisdiction to review" the denial of cancellation of removal under § 1229b. "Even so, this court has jurisdiction of 'constitutional claims or questions of law raised upon a petition for review.'" Solis v. Holder, 647 F.3d 831, 832 (8th Cir. 2011) (quoting 8 U.S.C. § 1252(a)(2)(D)). Thus, we have jurisdiction "to review the nondiscretionary determinations underlying a denial of an application for cancellation of removal, such as the 'predicate legal question whether the [BIA] properly applied the law to the facts in determining an individual's eligibility to be considered for the relief.'" Id. (alteration in original) (quoting Solano-Chicas v. Gonzales, 440 F.3d 1050, 1055 (8th Cir. 2006)).

"We review questions of law de novo and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005). "Congress has not defined the phrase 'crime involving moral turpitude,' and the meaning of that phrase was left 'to future administrative and judicial interpretation.'" Chanmouny v. Ashcroft, 376 F.3d 810, 811 (8th Cir. 2004) (quoting Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995)). Thus, we generally accord Chevron deference to the BIA's interpretation of the phrase, and will "uphold its construction as long as it is reasonable." Id.; see Chevron

U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–44 (1984). However, Chevron deference applies only to "agency action that 'carries the force of law.'" Godinez-Arroyo v. Mukasey, 540 F.3d 848, 850 (8th Cir. 2008) (alteration omitted) (quoting United States v. Mead Corp., 533 U.S. 218, 221 (2001)). We have previously acknowledged that an unpublished BIA opinion, like the one in this case, "may lack the force of law and Chevron deference may be inappropriate." Id. But even if Chevron deference would not be appropriate, an unpublished BIA opinion would be entitled to "a lesser form of deference" under Skidmore v. Swift & Co., 323 U.S. 134 (1944). Id. Under Skidmore, an agency's non-binding opinion is accorded weight "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." Skidmore, 323 U.S. at 140. We need not decide whether Chevron or Skidmore deference is appropriate in this case, because even applying the lesser Skidmore deference, we affirm the BIA's decision. See Godinez-Arroyo, 540 F.3d at 851.

## A.  Criminal conviction

The petitioners first argue that the municipal judgments against them were for infractions, not criminal convictions. Congress has defined "conviction" to mean "a formal judgment of guilt of the alien entered by a court." 8 U.S.C. § 1101(a)(48)(A). The BIA has interpreted "a formal judgment of guilt of the alien" to refer to a judgment of guilt in a criminal proceeding. See In re Eslamizar, 23 I. & N. Dec. 684, 687 (B.I.A. 2004). A criminal proceeding, the BIA has explained, is "a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." Id. In determining whether a judgment is a criminal conviction, the BIA considers several factors, including how the relevant state classifies the judgment and whether each element of the offense must be proven beyond a reasonable doubt. See id. at 687–88.

-5-

In Matter of Cuellar-Gomez, the BIA applied the Eslamizar test to a Wichita, Kansas, municipal judgment for the offense of possession of marijuana, and found that it was a criminal conviction. 25 I. & N. Dec. 850, 853 (B.I.A. 2012). The BIA relied primarily on three circumstances: that Kansas state law gives municipal court judges the "authority to enter judgments of guilt in marijuana possession cases, and to impose fines or order the incarceration of defendants against whom judgments of guilt are entered"; that Kansas state law requires that the prosecution must prove every element of the charge beyond a reasonable doubt for a municipal judgment to be entered; and that Kansas state courts consider a municipal judgment to be a conviction for purposes of calculating a defendant's criminal history when sentencing the defendant for a subsequent state crime. Id. at 853.

In this case, the IJ concluded that the Great Bend and Hutchinson municipal judgments were not distinguishable from the Wichita judgment in Cuellar-Gomez. However, the petitioners contend they have identified various circumstances that were not considered in Cuellar-Gomez and that demonstrate the municipal judgments at hand are not criminal convictions under the Eslamizar test.[2] The petitioners additionally argue that the BIA erred in determining that Dominguez-Herrera's judgment was for a misdemeanor and not an infraction.

---

[2] The petitioners also suggest that relying on Cuellar-Gomez would be erroneous because in Castillo v. Attorney General, 729 F.3d 296 (3d Cir. 2013), the Third Circuit found it to be inconsistent with the BIA's other decisions. In Castillo, the BIA had determined that the petitioner's conviction was criminal solely because the petitioner was found guilty beyond a reasonable doubt. Id. at 305. The Third Circuit granted the petition, concluding that the BIA's decision arbitrarily departed from Cuellar-Gomez and other precedential BIA decisions applying Eslamizar, and was therefore not entitled to deference. Id. at 309–10. Thus, Castillo does not undermine the legitimacy of Cuellar-Gomez.

First, the petitioners argue that Kansas does not consider municipal offenses to be crimes. In support of this argument, they point to a 2002 opinion by the Kansas Attorney General that takes the position that municipal courts need not comply with Kansas' Uniform Mandatory Disposition of Detainers Act. Kan. Office of Att'y Gen., Opinion Letter No. 2002-48 (Oct. 18, 2002), 2002 WL 31373428. In part, the opinion relies on the Attorney General's conclusion that the Detainers Act applies only to complaints defining "a crime." Id. at *2. The term "crime," as used in the Kansas Criminal Code, refers to crimes defined by state law, not municipal law. Id. (citing Kan. Office of Att'y Gen., Opinion Letter No. 1997-31 (Mar. 27, 1997), 1997 WL 156519). In the petitioners' view, this analysis demonstrates that Kansas does not consider municipal offenses to be criminal in nature. But a more reasonable reading of the opinion is that the Detainers Act does not apply to municipal offenses because the legislature intended the Detainers Act to have a limited scope, not because municipal offenses can never be criminal. This interpretation is reinforced by the opinion's note that its conclusions are "limited to the application of the Detainers Act," and that "a municipal court may still have to grapple with speedy trial issues under the Sixth Amendment to the United States Constitution." Id. at *3.

Moreover, Kansas courts consistently treat municipal judgments under the UPOC as criminal convictions. See, e.g., City of Prairie Vill. v. Hogan, 855 P.2d 949, 952 (Kan. 1993) (referring to the enforcement of a UPOC ordinance as a "prosecution" and a "criminal action" and determining whether the evidence supported a finding of guilt beyond a reasonable doubt); City of Lindsborg v. Hulse, 236 P.3d 573, *2 (Kan. Ct. App. 2010) (unpublished table decision) (referring to the violation of a municipal ordinance defined under the UPOC as a "crime" and applying the rule of lenity to the interpretation of the ordinance). Thus, the petitioners' argument that Kansas does not consider municipal judgments to be criminal convictions is unavailing.

Second, the petitioners observe that when the BIA concluded that the municipal judgments at issue were criminal convictions, it relied on Kan. Stat. Ann. § 21-6810, which provides that a municipal judgment can be used to enhance a defendant's sentence for a subsequent state criminal conviction. The petitioners contend that this reliance was erroneous, because juvenile adjudications, which are not considered "criminal convictions" in Kansas, State v. LaMunyon, 911 P.2d 151, 155 (Kan. 1996), can also be used to enhance a defendant's sentence. See Kan. Stat. Ann. § 21-6810(a). Thus, the petitioners argue, "the fact that [municipal judgments] can be used to enhance a later sentence is not determinative." We agree that, by itself, this fact might be insufficient to establish that a municipal offense is criminal. However, a fact need not be determinative to be relevant. Here, § 21-6810 represents the Kansas legislature's judgment that municipal violations can be comparable to state criminal convictions. The BIA did not err in relying on this circumstance, together with others, in determining that the municipal judgments against the petitioners were criminal convictions.

Next, the petitioners point out that in Kansas, the right to appeal an order revoking probation is available to those convicted under state law, but not under municipal law. Because the right to appeal is a touchstone of criminal prosecutions, they argue, the municipal judgments at issue here were therefore not criminal. But "[p]robation revocation . . . is not a stage of a criminal prosecution." Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973). Although some due process protections apply in a probation revocation proceeding, they are not coextensive with those that apply in the underlying criminal proceeding. See id. In fact, even someone convicted of a Kansas state crime may not appeal a probation revocation in all circumstances. See State v. Legero, 91 P.3d 1216, 1218 (Kan. 2004) (holding that there is no right to appeal to district court when a magistrate judge revokes a defendant's probation for a state criminal conviction). Thus, the lack of an appeals process for probation revocations has little bearing on the question of whether the underlying conviction was criminal.

Finally, the petitioners argue that the judgment against Dominguez-Herrera is not a criminal conviction because on the Abstract of Conviction, a box labeled "infraction" was marked. Because an infraction is punishable only by the imposition of a fine, Kan. Stat. Ann. § 8-2118, the petitioners argue that Dominguez-Herrera's offense was therefore not criminal. The BIA rejected this argument, concluding that the marking of the box labeled "infraction" was a "scrivener's error," and that, in fact, Dominguez-Herrera was convicted of a criminal offense. We agree. It is true that the Abstract of Conviction does not refer explicitly to UPOC § 6.1. But it does state that Dominguez-Herrera was convicted of "theft" in violation of "21-3701" in Great Bend Municipal Court. The most reasonable interpretation of the document is that Dominguez-Herrera was convicted of theft under the municipal analogue to Kan. Stat. Ann. § 21-3701: UPOC § 6.1. Moreover, it was Dominguez-Herrera's burden to establish his eligibility for cancellation of removal, see 8 U.S.C. § 1229a(c)(4), and he offered no evidence or testimony supporting a different interpretation of the document. Theft under UPOC § 6.1 is a Class A violation, the maximum sentence for which is "a definite term of confinement . . . which shall be fixed by the court and shall not exceed one year." UPOC § 12.1(a)(1). Thus, the judgment against Dominguez-Herrera is for a criminal offense, not an infraction.

## B. Crimes involving moral turpitude

Next, the petitioners argue that the crimes they were convicted of did not involve moral turpitude. The BIA has interpreted the phrase "moral turpitude" to mean "conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." Chanmouny, 376 F.3d at 811–12 (quoting In re Ajami, 22 I. & N. Dec. 949, 950 (B.I.A. 1999)). "It is well settled that theft or larceny offenses involve moral turpitude." In re Jurado-Delgado, 24 I. & N. Dec. 29, 33 (B.I.A. 2006) (citing In re De La Nues, 18 I. & N. Dec. 140, 145 (B.I.A. 1981); In re Westman, 17 I. & N. Dec.

50, 51 (B.I.A. 1979)). However, "[o]rdinarily, a conviction for theft is considered to involve moral turpitude only when a permanent taking is intended." In re Grazley, 14 I. & N. Dec. 330, 333 (B.I.A. 1973).

To determine whether a particular conviction is for a crime involving moral turpitude, we first examine the statute itself. See Chanmouny, 376 F.3d at 812. "If the statute defines a crime in which moral turpitude necessarily inheres, then the conviction is for a crime involving moral turpitude for immigration purposes, and our analysis ends." Id. (quoting In re Ajami, 22 I. & N. Dec. at 950). But "if the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a 'divisible' statute, and we look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted." Id. (quoting In re Ajami, 22 I. & N. Dec. at 950).

The BIA concluded that UPOC § 6.1 defines a crime in which moral turpitude necessarily inheres because it applies only when a permanent taking was intended. This interpretation is supported by the text of UPOC § 6.1, which limits its definition of "theft" to acts done "with the intent to deprive the owner permanently of the possession, use or benefit of the owner's property." The petitioners, on the other hand, argue that UPOC § 6.1 applies to temporary takings as well as permanent takings, because the finder of fact may sometimes presume intent to permanently deprive. UPOC § 6.2 provides a list of factual circumstances that constitute "prima facie evidence of intent to permanently deprive the owner or lessor of property of the possession, use or benefit thereof." For example, it is prima facie evidence of intent to permanently deprive if the defendant fails to return rented personal property for more than ten days after the due date and more than seven days after being notified to return the property. UPOC § 6.2(a)(2).

The petitioners' argument rests on the theory that the presumptions listed in UPOC § 6.2 effectively allow a defendant to be convicted under UPOC § 6.1 even if

the government does not prove intent to permanently deprive beyond a reasonable doubt. It is true that in some circumstances, a statutory presumption can unconstitutionally "undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." Cty. Court of Ulster Cty. v. Allen, 442 U.S. 140, 156 (1979). However, where a statutory presumption "leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." Id. at 157. We conclude that UPOC § 6.2 allows a factfinder to accept or reject the suggested inferences, and that the inferences have a rational connection to the ultimate question of whether a defendant acted with intent to permanently deprive. See State v. Smith, 573 P.2d 985, 989 (Kan. 1977) (finding that presumptions nearly identical to those listed in UPOC § 6.2 did not unconstitutionally infringe on the reasonable-doubt standard). Accordingly, intent to permanently deprive is an element of UPOC § 6.1 that must be proven beyond a reasonable doubt.

The petitioners also point out that UPOC § 6.1 criminalizes conduct that includes relatively trivial misdeeds, such as failing to return a library book, see UPOC § 6.2(b). We recognize that UPOC § 6.1 encompasses acts that do not seem particularly "base, vile, or depraved," as those words are commonly used. However, Chevron requires us to defer to the BIA's numerous published opinions interpreting "crime involving moral turpitude" to include thefts where a permanent taking was intended. See Franklin, 72 F.3d at 572 ("Having consistently adhered to its view . . . for nearly twenty years, the BIA's interpretation is entitled to deference."). Thus, the judgments against the petitioners were crimes involving moral turpitude.

## C. Maximum penalty

Finally, the petitioners argue that the BIA erred in determining that the offenses the petitioners were convicted of were punishable by a year or more in prison. With respect to Hernandez-Martinez, the petitioners note that her Waiver of Right to Counsel and Trial form indicates she was charged with a "Class A Misdemeanor, maximum penalties of up to 1 year in jail and a $2,500 fine." The petitioners argue that this does not include a penalty of one year, because when the Kansas state legislature intends to include the maximum amount of time in a range, it uses the phrase "up to and including." But it is the text of the UPOC, not the Waiver of Right to Counsel and Trial form, that sets the maximum punishment for a violation of UPOC § 6.1. UPOC § 6.1 provides that theft of property worth less than $1,000 is a Class A violation. For a Class A violation, the UPOC authorizes a municipal court to impose "a definite term of confinement in the city or county jail which shall be fixed by the court and shall not exceed one year." UPOC § 12.1(a)(1). Accordingly, Hernandez-Martinez was convicted of an offense punishable by a year in prison. With respect to Dominguez-Herrera, the petitioners reiterate their argument that his conviction was an infraction, for which no term of incarceration could be imposed. As explained above, the BIA did not err in determining that Dominguez-Herrera was convicted of violating UPOC § 6.1. Thus, like Hernandez-Martinez, Dominguez-Herrera was convicted of an offense punishable by a year in prison.

## III. Conclusion

We deny the petition.

_____