**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAKHWINDER LATTER-SINGH, AKA
Lakhwinder Latter-Latter,
                *Petitioner,*

        v.

ERIC H. HOLDER JR., Attorney
General,
                *Respondent.*

No. 08-71277

Agency No.
A072-141-045

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 2, 2011—San Francisco, California

Filed February 17, 2012

Before: Marsha S. Berzon and Jay S. Bybee, Circuit Judges,
and Thomas J. Whelan, Senior District Judge.*

Opinion by Judge Bybee

---

*The Honorable Thomas J. Whelan, Senior District Judge for the U.S.
District Court for the Southern District of California, sitting by designa-
tion.

---

**COUNSEL**

James Todd Bennett, El Cerrito, California, for the petitioner.

Puneet Cheema and Mona Maria Yousif, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

---

**OPINION**

BYBEE, Circuit Judge:

Petitioner Lakhwinder Latter-Singh ("Singh"), a native and citizen of India, petitions for review of the Board of Immigration Appeals's ("BIA") order dismissing his appeal. Singh claims that the BIA wrongly determined that a violation of California Penal Code § 422 constitutes a crime involving moral turpitude (or "CIMT"), thus rendering him removable. Although we previously determined that a violation of § 422 is an aggravated felony, *see Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 717 (9th Cir. 2003), we have not yet decided whether § 422 is categorically a crime involving moral turpitude. We do so now and answer the question in the affirmative. We also address and reject Singh's other claimed errors.

I

Singh entered the United States illegally in January 1993 and received a grant of asylum in September of that year.

Singh never obtained legal permanent residency in the United States.

Singh came to the attention of asylum officers after he was convicted for making threats "with intent to terrorize" in violation of California Penal Code § 422. In March 2004, the Department of Homeland Security ("DHS") commenced removal proceedings against Singh by serving him with a Notice to Appear ("NTA"). The NTA alleged, among other things, that Singh was subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a crime involving moral turpitude.

Singh sought relief from removal by: (1) submitting a new application for asylum; (2) applying for withholding of removal and relief under the Convention Against Torture ("CAT"); and (3) seeking to adjust his status under § 209(b) of the INA in conjunction with a waiver of inadmissibility under § 209(c), 8 U.S.C. § 1159(b)-(c). In 2007, after fourteen days of hearings and testimony, the immigration judge ("IJ") denied Singh's application for adjustment of status and a § 209(c) waiver, as well as Singh's application for asylum, withholding of removal, and relief under CAT, and ordered Singh removed to India.

The BIA affirmed the IJ's order and determined that Singh's conviction under § 422 rendered him removable, because § 422 categorically constitutes a crime involving moral turpitude. To reach this conclusion, the BIA relied on *Rosales-Rosales*, 347 F.3d at 717, where we determined that the full range of conduct embraced by § 422 constitutes an aggravated felony because the statute necessarily requires a showing of willful violence. The BIA also noted that § 422 specifically requires willfulness of conduct to implicate criminal liability. The BIA therefore denied Singh his requested relief.

A petition for this court's review followed.

II

Although 8 U.S.C. § 1252(a)(2)(C) generally precludes judicial review of orders against aliens removable on criminal grounds, we have jurisdiction to review both "constitutional claims [and] questions of law" arising from removal orders. 8 U.S.C. § 1252(a)(2)(D). "Whether a crime involves moral turpitude is such a question of law." *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010). We therefore have jurisdiction to resolve the moral turpitude question, and we conduct our review de novo. *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1057 (9th Cir. 2006).

III

**[1]** To determine whether a crime is categorically one of moral turpitude, we examine "whether the full range of conduct encompassed by the criminal statute constitutes a crime of moral turpitude." *See Mendoza*, 623 F.3d at 1302. If the full range of conduct under the statute fits the definition of a crime involving moral turpitude, then any conviction under the statute can subject an alien to removability. As we explained in *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc), a two-step inquiry applies to a determination of the proper weight to give the BIA's conclusion that a particular crime is (or is not) a crime involving moral turpitude. First, after the BIA determines the offense the petitioner has been convicted of, the BIA must interpret the applicable state statute to ascertain the elements of the offense. *Id.* Because the BIA has no special expertise in the interpretation of state criminal statutes, we review this determination de novo. *See id*.

Second, once the BIA has identified the relevant offense elements, it must determine whether the offense constitutes a crime involving moral turpitude as defined by the INA. *Id.* at 907. To do so, the BIA should assess "the character, gravity, and moral significance of the conduct." *Id.* at 910. We have

recognized the BIA's special role in interpreting the INA, and as a result, we will afford deference to the BIA's conclusion regarding whether the statute under which Singh was convicted categorically criminalizes turpitudinous conduct. *Id.* at 908.

The level of deference in turn depends on the character of the BIA's opinion. If the BIA issues or relies on a precedential determination to conclude that a particular crime is a crime involving moral turpitude, we accord it *Chevron* deference, *see Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984); otherwise, we defer to the BIA's determination only to the extent that it has the power to persuade (i.e. *Skidmore* deference), *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *See Marmolejo-Campos*, 558 F.3d at 909; *see also Saavedra-Figueroa v. Holder*, 625 F.3d 621, 625 (9th Cir. 2010). The decision here falls into the latter category, so we apply *Skidmore* deference to the second part of the moral turpitude analysis. Our deference will depend on "the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140.

A

We begin by identifying the elements of Singh's crime of conviction. Singh was convicted under California Penal Code § 422, which provides, in relevant part:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate

prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Penal Code § 422.

**[2]** As California courts have explained, the elements of the completed crime under § 422 are: (1) willfully threatening to commit a crime that will result in death or great bodily injury to another person; (2) specific intent that the statement be taken as a threat; (3) the threat was "on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat "caused the victim to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the "victim's fear was reasonable under the circumstances." *People v. Jackson*, 100 Cal. Rptr. 3d 539, 543 (Ct. App. 2009).

**[3]** Although the BIA's analysis is terse and exhibits "less than ideal clarity," we can uphold its decision "if the agency's path may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). Here, the BIA properly identified and interpreted § 422 and its analysis is accorded some deference. The BIA correctly observed that § 422 requires "willful" conduct, and, based on that determination, and on this court's holding that a violation of § 422 categorically constitutes a crime of violence, the BIA held that § 422 "requires sufficient *mens rea*."[1]

---

[1] This is not the first time that the BIA has found that a § 422 violation is a crime involving moral turpitude in an unpublished opinion. *See, e.g.*, *In re Edik Azarian*, 2009 WL 1103497 (BIA Apr. 3, 2009) ("Section 422 . . . not only requires the intentional transmission of threats, but also contemplates a degree of threat that causes another person to feel sustained fear. As such, it is a crime so contrary to social mores that it necessarily involves moral turpitude."); *see also In re Noe Majen Chicas*, 2008 WL 762770 (BIA Feb. 27, 2008) (same).

There was no error in the BIA's identification of the elements of the California crime.

B

**[4]** Having identified the elements of Singh's conviction, we next compare these elements with the definition of a crime involving moral turpitude to determine whether they satisfy that definition. *See Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). Although the immigration statutes do not specifically define offenses constituting crimes involving moral turpitude, a crime involving moral turpitude is generally a crime that "(1) is vile, base, or depraved and (2) violates accepted moral standards." *Saavedra-Figueroa*, 625 F.3d at 626. The BIA has emphasized that "evil or malicious intent is . . . the essence of moral turpitude," *In re Flores*, 17 I. & N. Dec. 225, 227 (BIA 1980), and, therefore, one test "to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind." *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999). We have upheld this emphasis on evil intent. *See Mendoza*, 623 F.3d at 1302.

Although we have held that criminal threats alone, without any attendant serious physical harm, do not necessarily implicate moral turpitude, *see Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1167 (9th Cir. 2006), we conclude that, unlike in *Fernandez-Ruiz*, the particular threat crime at issue here is categorically a crime involving moral turpitude for three reasons.

**[5]** First, the underlying conduct threatened is itself a crime of moral turpitude. Section 422 criminalizes only those statements that threaten "death or great bodily injury." Cal. Penal Code § 422. The "intentional infliction" of such an injury constitutes a crime of moral turpitude. *See, e.g.*, *Galeana-Mendoza*, 465 F.3d at 1061; *Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1195 (9th Cir. 2006).

That was not true of the statute in *Fernandez-Ruiz*, which involved a simple assault. *See Fernandez-Ruiz*, 468 F.3d at 1165. It was also not true in *Uppal v. Holder*, in which we analyzed Canada's aggravated assault statute and determined that it did not implicate turpitudinous conduct. 605 F.3d at 719. The statute in *Uppal* did not "involv[e] a specific intent to injure or a special trust relationship and [did] not requir[e] that the assault cause death or even serious bodily injury." *Id.* (emphasis omitted).

We began our analysis in *Uppal* from the established proposition that "simple assault battery convictions are not categorically CIMT convictions because the required mens rea for [such crimes] is usually the intent to touch another offensively, not the 'evil' intent typically required for a CIMT." *Id.* at 716. Such offenses, however, may be transformed into crimes involving moral turpitude "if they necessarily involve[ ] aggravating factors that significantly increase[ ] their culpability," such as "the intentional infliction of serious bodily injury on another." *Galeana-Mendoza*, 465 F.3d at 1061 (quoting *In re Sanudo*, 23 I. & N. Dec. 968, 973 (BIA 2006)). The distinction, as the *Uppal* court explained, is " 'some aggravating dimension' sufficient to increase the culpability . . . [and] transform the offense into one categorically a CIMT," "one that says something about the turpitude or blameworthiness inherent in the action." 605 F.3d at 717. We concluded that "an assault statute *not* involving a specific intent to injure or a special trust relationship and *not* requiring that the assault cause death or even serious bodily injury cannot qualify as a categorical CIMT." *Id.* at 719.

A conviction under § 422 requires both proof of the "specific intent to injure" required of crimes involving moral turpitude as well as proof of a threat of "death [ ] or serious bodily injury" made with the specific intent that the victim believe that the threat will be carried out. *Id.*; *see also* Cal. Penal Code § 422. The crime threatened, therefore, would, if carried out, be a crime of moral turpitude under our caselaw.

**[6]** Second, § 422 criminalizes only that conduct which results in substantial harm by being "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," as to "caus[e] the threatened "person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." Cal. Pen. Code § 422. The statute does not criminalize "emotional outbursts" or "mere angry utterances or ranting soliloquies, however violent," but rather proscribes a narrow category of speech that "instill[s] fear in others." *In re Ryan D.*, 123 Cal. Rptr. 193, 198 (Ct. App. 2002) (internal quotation marks omitted); *see also People v. Wilson*, 112 Cal. Rptr. 3d 542, 555 (Ct. App. 2010) ("[A] criminal threat is a specific and narrow class of communication, and the expression of an intent to inflict serious evil upon another person." (internal quotation marks omitted)). *Compare People v. Fierro*, 103 Cal. Rptr. 3d 858, 862-63 (Ct. App. 2010) (internal quotation marks omitted) (finding that substantial evidence supported jury's finding of reasonable, sustained fear where victim testified that threats caused him to fear for his safety for fifteen minutes), *with In re Ricky T.*, 105 Cal. Rptr. 2d 165, 170 (Ct. App. 2001) (finding no sustained fear, and therefore no violation of § 422, where a student threatened to "get" a teacher, but teacher sent student to the school office and did not report incident until the next day). The crime at issue in *Fernandez-Ruiz* did not have a similar requirement that the person threatened be in *sustained* fear of immediate danger to his or his family's *safety*.

**[7]** Finally, the mens rea required by § 422 constitutes the evil intent required to render conduct morally turpitudinous. The BIA has held, in the context of a criminal stalking statute, that the intentional transmission of a "threat to kill another or inflict physical injury against the victim," such as the conduct criminalized by § 422, is "evidence of a vicious motive or a corrupt mind." *In re Ajami*, 22 I. & N. Dec. at 952 (reviewing case law and concluding that "threatening behavior can be an

element of a crime involving moral turpitude" (quotation marks omitted)).**²** To reach this conclusion, the BIA cited previous opinions in which it found that intentionally threatening behavior indicated a crime involving moral turpitude. *Id.* (citing, inter alia, *In re F—*, 3 I. & N. Dec. 361 (BIA 1949) (involving the mailing of menacing letters that threatened violence to the recipient)).

**[8]** The BIA is entitled to place great weight on the presence or absence of a *mens rea* element when determining whether a crime involves moral turpitude. *See Marmolejo-Campos*, 558 F.3d at 916 (affirming BIA decision where, "after assessing the statutory definition and the nature of the crime, the BIA concluded that given the mens rea involved, the crime was one of moral turpitude") (citation omitted) (internal quotation marks omitted). Section 422 requires not only that a person threaten death or great bodily harm, but also that such threats be made both "willfully" *and* "with the specific intent that the statement . . . be taken as a threat." Cal. Penal Code § 422; *see Wilson*, 112 Cal. Rptr. 3d at 562; *see also Rosales-Rosales*, 347 F.3d at 717 ("[T]he mens rea required by [§ 422]—willfulness—is volitional in nature."). The intent to instill great fear of serious bodily injury or death in another constitutes the "vicious motive or corrupt mind" demonstrative of a crime involving moral turpitude. As such, we conclude that § 422 is categorically a crime involving moral turpitude.

We find support for our conclusion in *Chanmouny v. Ashcroft*, 376 F.3d 810, 814-15 (8th Cir. 2004), where the Eighth Circuit concluded that a conviction under Minnesota's "terrorist threat" statute constituted a crime involving moral turpitude. That statute criminalized "threaten[ing], directly or indirectly, to commit any crime of violence with purpose to

---

**²**Although this court does not afford the BIA's unpublished decision in this case *Chevron* deference, we do afford published opinions, like *Ajami*, such deference. *See Saavedra-Figueroa*, 625 F.3d at 625.

terrorize another." *Id.* at 812 (quoting Minn. Stat. § 609.703 subdiv. (1)).**³** Noting that the Minnesota Supreme Court had interpreted the statute to require the "objective or intention" to "cause extreme fear," the Eighth Circuit reasoned that the crime "falls within the category of offenses requiring a vicious motive or evil intent." *Chanmouny*, 376 F.3d at 814 (internal quotation marks omitted). Distinguishing simple assault statutes as "general intent" crimes, the court "agree[d] with the IJ that a violation of the Minnesota terroristic threat statute committed with the purpose to terrorize . . . includes the requisite depravity and breach of duties owed between persons to satisfy the moral turpitude standard." *Id.* at 814-15. The court therefore found that the act of threatening with the purpose to terrorize constituted a crime involving moral turpitude. *Id.* at 815. We find that reasoning persuasive, and adopt it here.

**[9]** Because § 422 criminalizes only the willful threatening of a crime that itself constitutes a crime of moral turpitude with the intent and result of instilling sustained and imminent grave fear in another, we conclude that it is categorically a crime involving moral turpitude within the meaning of § 1182(a)(2)(A)(i)(I). As a result, Singh is ineligible for admission to the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I).**⁴**

---

**³**In *Chanmouny*, the Minnesota statute at issue criminalized both threats made with the purpose to terrorize and those made with "a reckless disregard of the risk of causing such terror." 376 F.3d at 812. The Eighth Circuit, however, reviewed the record of the petitioner's conviction and determined that he had been convicted of making threats with the purpose of terrorizing, and therefore only analyzed that portion of the statute to determine whether a conviction constituted a crime involving moral turpitude. *See id.* at 813-14.

**⁴**Although the consideration is not of great weight given the different roles of the CIMT designation under the INA and California law, we note that our holding today brings us in line with the conclusion reached by California courts that a violation of § 422 is a crime involving moral turpitude. In *People v. Thornton*, 4 Cal. Rptr. 2d 519 (Ct. App. 1992), for

IV

**[10]** Singh's remaining arguments have no merit. Singh argues that the BIA erred in denying him a waiver of inadmissibility under § 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c), because it acted *ultra vires*. But the BIA acted within its power by imposing a higher standard for the issuance of a waiver for Singh because of his conviction for a violent and dangerous crime. *Cf. Mejia v. Gonzales*, 499 F.3d 991, 995-96 (9th Cir. 2007) (heightened standard for a waiver is "rationally related to the national immigration policy of not admitting aliens who could be a danger to society"). Because the BIA acted within its power, we are without jurisdiction to review the discretionary use of that power. *See Robleto-Pastora v. Holder*, 591 F.3d 1051, 1058 (9th Cir. 2010) ("Section 209(c) provides . . . the Attorney General with discretion to waive inadmissibility"); 8 U.S.C. § 1252(a)(2)(B).

**[11]** Singh argues that the BIA applied the wrong standard when it found he committed a particularly serious crime. That is not the case. The BIA considered and applied the correct factors to determine whether Singh was convicted of a particularly serious crime. *See In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982) (identifying the factors relevant to the particularly serious crime determination), *superseded in part by statute*, 8 U.S.C. § 1253(h). Specifically, the BIA noted that Singh had been convicted of a particularly serious crime, cited

example, the California Court of Appeal was asked to consider whether a violation of § 422 constituted a crime involving moral turpitude such that a past criminal conviction for that offense could be used to impeach a criminal defendant. *Id.* at 521. Reasoning that because § 422 "does not punish casual statements which a reasonable person would ignore," but rather criminalizes "[t]he knowing infliction of mental terror," the *Thornton* court concluded that the conduct described in § 422 "violates generally accepted standards of moral behavior," and therefore is a crime of moral turpitude. *Id.* at 522

the relevant portion of the INA, and then considered, as required, "the nature of [Singh's] conviction, the circumstances and underlying facts of the conviction," and the type of sentence imposed. *Id.*

**[12]** Singh also challenges the denial of relief under CAT. Substantial evidence supports the BIA's conclusion that conditions in India have changed such that Singh may safely return. Sikhs such as Singh are a powerful minority group in India. The current prime minister of India is a Sikh, and the record reflects that abuses by police and military have decreased in frequency and intensity. CAT relief is therefore unavailable.[5]

**[13]** Finally, Singh claims that the order terminating his asylee status was invalid. None of the objections Singh raises have merit. The IJ held a hearing on Singh's asylee status in conjunction with his removal hearing and ordered Singh's asylee status terminated. Thereafter, Singh won on appeal to the BIA, which resulted in a remand order and an instruction to the IJ to explain its termination order. The IJ did so, and after hearing Singh's arguments as to why the IJ should not terminate his status, the IJ issued a new order terminating Singh's status. Singh has failed to show error in the process.

## PETITION DISMISSED IN PART, DENIED IN PART.

---

[5]Also, the BIA resolved Singh's request for withholding of removal under CAT by considering whether it was more likely than not that he would be tortured if returned to India and then holding that Singh did not qualify for "protection" under CAT.