FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ETUMAI FELIX MTOCHED,<br>*Petitioner*,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney<br>General,<br>*Respondent*. | No. 13-70295<br><br>Agency No.<br>A087-957-052<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 9, 2014—Honolulu, Hawaii

Filed May 22, 2015

Before: A. Wallace Tashima, Johnnie B. Rawlinson,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Immigration

The panel denied Etumai Mtoched's petition for review from the Board of Immigration Appeals' order removing him based on his conviction for assault with a dangerous weapon under Commonwealth of the Northern Mariana Islands law, 6 N. Mar. I. Code § 1204(a).

The panel held that United States immigration laws could properly be applied to Mtoched within the CNMI, even though he entered the territory, committed the crime, and was convicted before U.S. immigration laws were extended to the CNMI pursuant to 48 U.S.C. § 1806. The panel held that such application was not impermissibly retroactive, and that it did not infringe upon CNMI's right to self-government in violation of the terms of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States.

The panel also held that Mtoched's conviction constituted a crime involving moral turpitude, making him removable under the Immigration and Nationality Act. The panel concluded that § 1204(a) is divisible into three subparts all involving bodily injury to another person with a dangerous weapon. Applying the modified categorical approach, the panel held that because Mtoched's conviction entailed purposeful conduct, more than simply reckless conduct, it demonstrated evil intent and constituted a CIMT.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel also held that Mtoched was statutorily ineligible for an INA § 212(h) waiver of inadmissibility, because under 8 C.F.R. § 1245.1(f) a waiver for an alien within the United States is available only in connection with an application for adjustment of status, even if he is not eligible to apply for adjustment.

## COUNSEL

Joseph E. Horey, O'Conner, Berman, Dotts & Banes, Saipan, MP, for Petitioner.

Anthony W. Norwood (argued) and Jesse M. Bless, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

CLIFTON, Circuit Judge:

Etumai Mtoched, a citizen of Palau and a resident of the Commonwealth of the Northern Mariana Islands ("CNMI"), petitions for review of an order of removal from the United States. That order was entered based on Mtoched's conviction for assault with a dangerous weapon under CNMI law, 6 N. Mar. I. Code § 1204(a).

One set of issues raised by Mtoched's petition arises from CNMI's unique posture in relationship with United States immigration law. Prior to 2009, CNMI could be described as being outside the immigration boundary of the United States. Accordingly, United States immigration laws, including the

Immigration and Nationality Act ("INA"), did not apply to CNMI. Instead, the CNMI government was itself responsible for enacting and administering laws governing immigration into and deportation from CNMI. That changed when most of the United States immigration laws, including the INA, were extended to CNMI via legislation codified as 48 U.S.C. § 1806, contained within the Consolidated Natural Resources Act of 2008 ("CRNA"), Pub. L. 110-229, 122 Stat. 754, effective on November 28, 2009. Shortly thereafter, the Department of Homeland Security initiated proceedings against Mtoched that culminated in the order of removal that is the subject of this petition. Mtoched challenges that order as a violation of CNMI's right to self-government and as an impermissible retroactive application of law. We reject those challenges and conclude that United States immigration laws may properly be applied and enforced within CNMI to Mtoched even though he entered that territory, committed the crime, and suffered the conviction upon which the removal order is based prior to the extension of United States immigration laws to the Commonwealth.

Mtoched also challenges the determination that his conviction was for a crime involving moral turpitude ("CIMT"), making him removable under the INA. We disagree and conclude that it was.

In addition, we reject his contention that he is eligible for a waiver of inadmissibility under § 212(h) of the INA, 8 U.S.C. § 1182(h). The Board of Immigration Appeals ("BIA") held that he was ineligible because, under the governing regulation, an application for such a waiver can only be made by someone already within the United States together with an application for adjustment of status, and Mtoched was not eligible to submit an application for

adjustment of status.  We accept the BIA's interpretation.  As a result, we deny Mtoched's petition for review.

## I.  Background

The Northern Mariana Islands are located in the western Pacific Ocean, north of Guam.  Formerly Spanish colonies before the Spanish American War, they were governed thereafter by Germany, then Japan.  Following World War II, the islands were administered by the United States as part of the Trust Territory of the Pacific Islands pursuant to a Trusteeship Agreement with the United Nations Security Council.  Though other portions of the former trust territories decided to become independent nations, these islands elected to enter into a closer and more lasting relationship with the United States.  Years of negotiation culminated in 1975 with the signing of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States (hereinafter "Covenant"), Pub. L. 94-241, 90 Stat. 263 (1976).  After a period of transition, in 1986 the trusteeship terminated, and CNMI was fully launched.  *See generally United States ex. rel. Richards v. Leon Guerrero*, 4 F.3d 749, 751–52 (9th Cir. 1993).

Etumai Mtoched is a citizen of Palau who has lived for many years in CNMI.  Palau was previously part of the Trust Territories and is now an independent nation that has entered into a Compact of Free Association with the United States.  Mtoched says that he moved to Saipan, the largest island in the CNMI, in 1991 and has remained there ever since.  Because Mtoched moved to Saipan before United States immigration laws were extended over CNMI, he was admitted by CNMI immigration officials applying CNMI law.

Mtoched was convicted in 1994 for assault with a dangerous weapon under 6 N. Mar. I. Code § 1204(a). He was specifically charged with having "purposely stabbed [the victim] under his arm pit with a knife, causing bodily injury" to the victim. Mtoched pled no contest. The court accepted the plea and found him guilty. He was sentenced to five years in jail, but the jail time was suspended subject to community service and the payment of restitution.

A few months after the effective date for the extension of United States immigration laws over CNMI, the federal government initiated removal proceedings against Mtoched. The Notice to Appear cited his conviction for assault with a dangerous weapon as a crime of moral turpitude, making him removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Mtoched moved to terminate the removal proceedings. The immigration judge ("IJ") denied the motion to terminate the removal proceeding in a written opinion. She determined that Mtoched's conviction was for a CIMT, applying the modified categorical approach. The IJ also rejected the argument that application of the INA would have an unlawful retroactive effect. Mtoched then notified the IJ of his application for a § 212(h) waiver, which could permit him to avoid removal despite his conviction. The IJ determined that Mtoched was ineligible for such a waiver on the grounds that an application for that kind of waiver by an alien within the United States must be submitted in conjunction with an application for an adjustment of status, which Mtoched had not submitted and was not eligible to submit. The IJ ultimately entered an order of removal, directing that he be removed to Palau if he failed to voluntarily depart.

Mtoched appealed the order to the BIA. The BIA upheld the IJ's determination that Mtoched had been convicted of a CIMT. The BIA also agreed that the application of United States immigration laws to Mtoched had no impermissible retroactive effect, noting that Mtoched had been deportable under the previously applicable CNMI immigration laws as well. The BIA declined to consider Mtoched's argument that the extension of the INA to CNMI was impermissible as a violation of the Commonwealth's right to self-government under the Covenant, concluding that it was beyond the Board's jurisdiction. The BIA also upheld the IJ's denial of a § 212(h) waiver, agreeing with the IJ that such a waiver may be requested by an alien within the United States only with an application for adjustment of status.

Mtoched filed a timely petition for review.

## II. Extension of the INA to CNMI

Mtoched presents two separate arguments challenging the application of the INA to remove him from the United States. One is that the application violates the terms of the Covenant and infringes upon CNMI's right to self-government. The other is that it represents an unlawfully retroactive application of law years after his entry into CNMI in 1991 and his conviction for a crime in 1994. We are not persuaded by either argument.

### 1. *The Alleged Violation of the Covenant*

Mtoched argues that he cannot be removed because the extension of the INA to CNMI violated the terms of the Covenant and thus cannot have the force of law. Essentially similar arguments were made by the CNMI government itself

when it sought to enjoin application and enforcement of United States immigration laws to the Commonwealth after Congress adopted the legislation extending those laws to CNMI. The United States District Court for the District of Columbia rejected that effort in *Commonwealth of the Northern Mariana Islands v. United States*, 670 F. Supp. 2d 65 (D.D.C. 2009), holding that the extension was lawful in a decision that substantially relied upon and quoted from our court's decision in *Richards*. *Id*. at 80–91. We agree with that decision and adopt its reasoning. "Congress was authorized to enact the challenged provisions of the CNRA by the plain and unambiguous terms of Section 503 of the Covenant." *Id.* at 91.

### 2. *Retroactivity*

Mtoched argues that the extension of the INA to CNMI and the subsequent application of the INA to him, years after his crime and conviction, has an impermissible retroactive effect.

There is a presumption in American law against retroactive legislation. *Vartelas v. Holder*, 132 S. Ct. 1479, 1486 (2012). In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court established a two-step test to determine whether a statute has an impermissible retroactive effect. The first question is "whether Congress has expressly prescribed the statute's proper reach." *Id*. at 280. If so, then the analysis ends and the statute should be applied as Congress determined. *Id*. If there is no express command in the statute, "the court must determine whether the new statute would have retroactive effect, *i.e*., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect

to transactions already completed." *Id.* If so, the presumption against retroactive application should apply. *Id*.

The BIA concluded that the statute, 48 U.S.C. § 1806, did not express a clear intent to make the legislation retroactive. The government acknowledges the same in its arguments to us. As a result, we must consider the second *Landgraf* question. After doing so, we conclude that application of the INA to Mtoched is proper.

Mtoched was already subject to possible deportation under the prior CNMI law because he was convicted of a felony, a deportable offense under that law. *See* 3 N. Mar. I. Code § 4340(d) (repealed) *and* 6 N. Mar. I. Code § 102(i). Mtoched admits that to be true. On that level, therefore, the application of the INA does not constitute a change. Mtoched was deportable before, under the prior CNMI immigration laws, and he remains deportable under the INA.

Mtoched argues, however, that deportation under prior CNMI law was subject to the discretion of the CNMI Attorney General. Under the CNMI law that previously applied, the CNMI Attorney General had "ultimate discretion as to when and whether to bring prosecutions and actions for deportations pursuant to [the former CNMI immigration laws]." 3 N. Mar. I. Code § 4312(d)(4) (repealed). The CNMI Attorney General did not bring such proceedings against Mtoched.

Mtoched further argues that there is substantially less discretion available under the INA than was assigned to the CNMI Attorney General under the prior law, at least for someone in Mtoched's situation, an alien who is removable or excludable on the grounds of having committed a crime.

He points, for example, to an INA section limiting the exercise of discretion by the United States Attorney General to waive an alien's criminal conduct. *See* 8 U.S.C. § 1182(h). We are not persuaded by his argument.

For one thing, Mtoched has not established that the CNMI Attorney General had actually exercised discretion in his favor at any time while CNMI law applied, or that discretion would have been exercised if the matter had been raised. All that he has established is that CNMI deportation proceedings had not been commenced against him. The failure to initiate deportation proceedings is not the same as an actual exercise of discretion. Mtoched has not demonstrated that he had a right to discretionary relief or even a substantial prospect of obtaining relief of any formal kind.

The presumption against the retroactive application of law is triggered when such application would "tak[e] away or impai[r] vested rights acquired under existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past." *Vartelas*, 132 S. Ct. at 1486–87 (quoting Justice Story in *Soc'y for Propagation of Gospel v. Wheeler*, 22 F.Cas. 756, 767 (No. 13,156) (CCNH 1814)). Mtoched had no vested right to avoid deportation under CNMI law. Although the closure of a door to apply for discretionary relief can in some circumstances constitute "a new disability," *INS v. St. Cyr*, 533 U.S. 289, 321 (2001), Mtoched points to nothing other than the failure to initiate proceedings against him to support the notion that the prior CNMI law was more favorable to him. The fact that the federal government, as the new enforcement authority, has more resources or might be more aggressive in enforcement than the CNMI Attorney General does not represent the kind of

"new disability" against which the presumption against retroactivity is intended to protect.

Moreover, Mtoched's argument fails to appreciate that the federal government still maintains significant discretion. In particular, there is at least some degree of discretion inherent in the decision whether to initiate removal proceedings against a given individual. As the Supreme Court has observed, a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012). All that Mtoched demonstrated in connection with the prior CNMI law was that the CNMI Attorney General could decide "when and whether to bring prosecutions and actions for deportation." 3 N. Mar. I. Code § 4312(d)(4) (repealed). That discretion is not unlike the discretion that federal authorities have. His arguments about the limitations on the discretion of the United States Attorney General all involve the exercise of discretion after removal proceedings have been commenced and after the alien has been found otherwise removable. Mtoched did not establish that the CNMI authorities could not have acted to deport him under prior law or that he had any legal basis under CNMI law to avoid deportation. That the federal government has commenced removal proceedings against him does not represent an impermissibly retroactive application of law.

## III. Crime involving Moral Turpitude

Under 8 U.S.C. § 1182(a)(2)(A)(i)(I), an alien may be removed from the United States if convicted of a CIMT. Mtoched argues that his conviction was not for a crime that constituted a CIMT. We disagree.

Mtoched was convicted under 6 N. Mar. I. Code § 1204(a). That statute provided that a "person commits the offense of assault with a dangerous weapon if he or she threatens to cause, attempts to cause, or purposely causes bodily injury to another with a dangerous weapon." The statute is thus divisible into three distinct subparts, all involving bodily injury to another person with a dangerous weapon: (1) threaten to cause, (2) attempt to cause, or (3) purposely cause. Mtoched was charged with the third variation, "purposely stabbing" a named individual with a knife "causing bodily injury." In his plea agreement, Mtoched agreed to that as the factual basis for the conviction.[1]

"[T]he federal generic definition of a CIMT is a crime involving fraud or conduct that (1) is vile, base, or depraved and (2) violates accepted moral standards. Non-fraudulent CIMTs almost always involve an intent to harm someone." *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010) (internal quotation marks and citations omitted).

---

[1] The determination of whether a conviction is for a crime that represents a CIMT is based on application of the categorical approach. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 912 (9th Cir. 2009) (en banc). This court first determines if the relevant statute has the same elements as a generic crime. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the statute has the same elements as the generic crime, or sweeps more narrowly, then the crime is a categorical match, but if its sweep is broader than the generic crime's elements, then it fails the test. *Id.* (citations omitted). If the statute of conviction is divisible into subparts, each with separate elements, like the CNMI statute at issue here, some of which are categorical matches and some of which are not, the modified categorical approach may be used. *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (citing *Descamps*, 133 S. Ct. at 2285).

Convictions for simple assault and battery often do not constitute convictions for CIMTs because such crimes sweep in reckless activity, which does not require a finding of willfulness or other evil intent necessary for a CIMT. *See Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165–67 (9th Cir. 2006) (rejecting a conviction under Arizona's class 2 misdemeanor assault, a general assault statute, as a CIMT, because it penalized reckless conduct). But convictions for assault can qualify as morally turpitudinous "if they necessarily involve aggravating factors that significantly increase their culpability, such as the intentional infliction of serious bodily injury on another." *Latter-Singh v. Holder*, 668 F.3d 1156, 1161 (9th Cir. 2012) (internal quotation marks and citations omitted).

The offense of "purposely causing" bodily injury with a dangerous weapon requires evil intent and thus qualifies as a CIMT. Though we have found no decision by the CNMI Supreme Court that interprets the term "purposely" in 6 N. Mar. I. Code § 1204(a), the dictionary definition of the word "purposely" according to the 1981 edition of Webster's New Third International Dictionary, two years before the statute was last revised, is "with a deliberate or an express purpose." *Webster's Third New International Dictionary of the English Language Unabridged* 1847 (1981); *see Webster's Third New International Dictionary of the English Language Unabridged* 1847 (2002) (same definition). Black's Law Dictionary defines purposely similarly as "[i]n such a manner that the actor engaged in prohibited conduct with the intention of causing the social harm that the law was designed to prevent." *Black's Law Dictionary* 1431 (10th ed. 2014).

To be sure, terms delineating criminal mental intent sometimes have different meanings in different contexts.

*See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) ("'Willful' . . . is a word of many meanings, and its construction is often influenced by its context." (internal quotation marks and amendments omitted)). As used in this statute, though, it is plain that the term "purposely" is intended to have a meaning comparable with "intentionally," a specific intent to injure that pushes the assault committed by Mtoched into the realm of a CIMT. *Latter-Singh*, 668 F.3d at 1161–62. Because Mtoched's conviction entailed purposeful conduct, more than simply reckless conduct, it demonstrated evil intent and constituted a CIMT.

## IV.    Section 212(h) Waiver

Mtoched argues that he should be allowed to apply for a waiver under 8 U.S.C. § 1182(h), commonly called a § 212(h) waiver, which in some circumstances may permit an alien to overcome the effect of having committed a CIMT. The BIA held that he was statutorily ineligible for such a waiver.

Mtoched's problem is that he has already been admitted into the United States. The Attorney General has exercised authority granted to him under 8 U.S.C. § 1182(h)(2) to issue a regulation providing that an application for adjustment of status "shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien in the United States." 8 C.F.R. § 1245.1(f); *see Matter of Rivas*, 26 I. & N. Dec. 130, 132 (BIA 2013), *petition denied in Rivas v. U.S. Atty. Gen.*, 765 F.3d 1324 (11th Cir. 2014) (an alien "in the country in removal proceedings . . . must file a concurrent adjustment application in order to seek a waiver of the grounds of removal.").

Two other federal circuits have upheld that limitation. *Poveda v. U.S. Atty. Gen*., 692 F.3d 1168, 1176 (11th Cir. 2012) ("The new interpretation by the Board of section 212(h)—that an alien within the United States must apply for an adjustment of his status to receive a hardship waiver—is reasonable."); *Cabral v. Holder*, 632 F.3d 886, 891 (5th Cir. 2011) ("because Cabral was an alien inside the United States who had not filed a concurrent application for adjustment of status under § 1255, he was ineligible to apply for a § 212(h) waiver"); *see also Klementanovsky v. Gonzales*, 501 F.3d 788, 791-93 (7th Cir. 2007) (concluding that the limited availability of a waiver of inadmissibility of an alien within the United States did not deprive an alien of equal protection).

Under that regulation, the BIA has specifically held that aliens seeking admission to the United States while present in the CNMI after November 28, 2009, may only seek a waiver in conjunction with an application for adjustment of status. *Matter of Valdez*, 25 I. & N. Dec. 824, 828 (BIA 2012). That covers Mtoched, who has applied for a waiver but who has not submitted an application for adjustment of status.[2]

When a court reviews a regulation promulgated by an agency charged with administering such a statute, the first question is whether Congress spoke clearly to the matter. *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). If the intent of Congress is clear in the statutory language, then that ends the inquiry. *Id.* at 842–43. If not, the court generally defers to an agency's determination

---

[2] Mtoched may not adjust his status, because he is a citizen of Palau who may enter the United States as a non-immigrant under the section 141 of the Compact of Free Association with the Republic of Palau.

in its regulation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 843–44. When the BIA interprets a provision of the INA in a published decision of three members of the board, this court applies the same analysis and deference as outlined in *Chevron*. *Federiso v. Holder*, 605 F.3d 695, 697 (9th Cir. 2010).

The Attorney General is expressly authorized under 8 U.S.C. § 1182(h)(2) to prescribe regulations regarding that provision, and responsibility for adjudicating removal proceedings is assigned to the Attorney General and his designees. The statute says that an alien may seek a § 212(h) waiver when he is "applying or reapplying for a visa, for admission to the United States, or for adjustment of status." 8 U.S.C. § 1182(h)(2). The regulation issued by the Attorney General is consistent with the statutory language. 8 C.F.R. § 1245.1(f). *Matter of Rivas*, a published decision by a three member panel of the BIA, confirms the regulation's direction that a § 212(h) waiver for an alien within the United States is available only in connection with an application for adjustment of status, even for someone who is not eligible to apply for adjustment of status. *Matter of Rivas*, 26 I. & N. Dec. at 132. Mtoched has not established that the regulation and its interpretation are arbitrary, capricious, or manifestly contrary to the statute. We thus defer to the agency's interpretation. Mtoched was not eligible to apply for a § 212(h) waiver.

## V.  Conclusion

The petition for review is **DENIED.**